# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael D. Benson,<br><br>               Plaintiff,<br>v.<br><br>Emily Johnson Piper, *et al.*,<br><br>               Defendants. | Case No. 17-cv-266 (DWF/TNL)<br><br>**REPORT AND<br>RECOMMENDATION** |

      This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Plaintiff's Motion for Temporary Restraining Order, (TRO Motion, ECF No. 33), and Plaintiff's Motion for Amended Temporary Restraining Order, (Amended TRO Motion, ECF No. 49). These motions have been referred to the undersigned magistrate judge for a report and recommendation to the Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, pursuant to 28 U.S.C. § 636 and Local Rule 72.1. Based on all the files, records, and proceedings herein, and for the reasons set forth below, this Court recommends that Plaintiff's motions be denied and this case be stayed.

## I. BACKGROUND

      Plaintiff Michael D. Benson filed his "Complaint for Violations of Civil Rights under 42 U.S.C. § 1983" on January 27, 2017, bringing claims against 39 individuals—including Department of Human Services Commissioner Emily Johnson Piper, facility directors and supervisors, clinical supervisors, and security counselors—involved in the operation the Minnesota Sex Offender Program ("MSOP") facility located in Moose

Lake, Minnesota. (Compl., ECF No. 1). Benson asserts Defendants are "harassing and retaliating against [him] with 'special punishments' for exercising his constitutionally protected rights." (Compl. ¶ 10). Broadly put, Benson asserts Defendants are retaliating against him for filing a previous lawsuit in this District, *Michael D. Benson v. Emily Johnson Piper, et al.*, Case No. 16-cv-509 (DWF/TNL). (Compl. ¶ 10). In his previous suit, Benson challenges MSOP's badge policy as violating his First Amendment rights. *Michael D. Benson v. Emily Johnson Piper, et al.*, Case No. 16-cv-509 (DWF/TNL).[1] After being served with the present complaint, Defendants moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 24). Contemporaneously with filing his response to Defendants' motion to dismiss, Benson filed his TRO Motion.

In his TRO Motion, Benson seeks to "enjoin Defendants from disposing/destroying [his] personal property held in Property." (TRO Motion, at 1). Benson asserts he is being held at MSOP Unit Omega 2 which "only allows one . . . bin of personal property while all other units allow three . . . bins and [a] TV." (TRO Motion, at 1). Benson asserts that, given this policy, his "two bins of property with TV" will be disposed or destroyed on August 2, 2017 unless moved to another housing unit. (TRO Motion, at 1). Benson cites MSOP Property Policy No. 420-5250 (Nov. 1, 2016),[2] which allows for storage of property for up to 90 days, during which time "[c]lients must choose

---

[1] Benson also alleged that "MSOP officials retaliated against him after he violated the badge policy by, among other things, denying him food for three days, handcuffing him, and subjecting him to an unnecessary strip search . . . ." (*Michael D. Benson v. Emily Johnson Piper, et al.*, Case No. 16-cv-509 (DWF/TNL), ECF No. 27, at 2).

[2] While Benson quoted part of the policy, the complete policy was attached to Defendants' response. (Aff. of Susan Johnson ¶ 3, Ex. 2, ECF No. 41).

a disposition within 90 days of property storage." (TRO Motion, at 1). Benson asserts Defendants have "never explained or provided a hearing to explain why [he] is being held in Omega 2 jail as pleaded in the Complaint." (TRO Motion, at 1).

Defendants oppose Benson's TRO Motion, arguing that the motion is not sufficiently related to Benson's underlying complaint, that the motion is moot, and it fails on the merits. (ECF No. 40). In response, Benson filed an Amended TRO Motion and supporting memorandum, in which he agrees his original TRO Motion is moot. (ECF No. 50, at 3) ("[T]he Defendants moved the Plaintiff to the Omega Three Unit on 23 Jun 17, which negated the need for the TRO."). In the Amended TRO Motion, however, Benson shifts the relief he seeks to the following: enjoining Defendants from denying Benson access to religious services; enjoining Defendants from denying Benson access to the gym; and providing a stern warning to Defendants concerning retaliation. (Amended TRO Motion, at 1).

## II. ANALYSIS

### A. Legal Standard

Under Fed. R. Civ. P. 65(a), a court "may issue a preliminary injunction only on notice to the adverse party." The court may issue a temporary restraining order without notice to the adverse party only if "specific facts . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the movant shows efforts made to give notice and the reasons why notice should not be required. Fed. R. Civ. P. 65(b)(1). The "standard for issuing a TRO or a preliminary injunction is the same." *C.S. McCrossan Constr., Inc. v. Minnesota*

*Dept. of Transp.*, 946 F. Supp. 2d 851, 857 n.10 (D. Minn. 2013) (citing *S.B. McLaughling & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708–09 (8th Cir. 1989)); *see Carlson v. City of Duluth*, 958 F. Supp. 2d 1040, 1052 n.1 (D. Minn. 2013) (construing ambiguous motion for preliminary injunction or temporary restraining order as motion for preliminary injunction where defendant had noticed its appearance and submitted briefing and because standard was same between motions). Here, Defendants have had an opportunity to respond to Plaintiff's original TRO motion, so the Court will consider Plaintiff's original TRO motion as seeking a preliminary injunction. *C.S. McCrossan Constr.*, 946 F. Supp. 2d at 857 n.10; *Carlson*, 958 F. Supp. 2d at 1052 n.1.

Whether the Court should issue a preliminary injunction "involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). "A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (internal citations omitted). "A court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam); *see Kelley v. First Westroads Bank*, 840 F.2d 554, 558 (8th Cir. 1988) ("[T]he well-established function of a temporary restraining order is to maintain the status quo."). "The burden is especially heavy where . . . the moving party seeks not

to maintain the status quo, but to obtain relief similar to that which it could obtain after a trial on the merits." *Brooks v. Roy*, 881 F. Supp. 2d 1034, 1049 (D. Minn. 2012) (citing *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Feltzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993)).

Moreover, in "the prison context, a request for injunctive relief must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)). These same concerns are present where the administration of a facility housing civilly committed sex offenders is concerned. *See Senty-Haugen v. Goodno*, 462 F.3d 876, 887 (8th Cir. 2006) (explaining that "federal courts are to give deference to state officials managing a secure facility, and [Minnesota Sex] Offender Program staff have a substantial interest in providing efficient procedures to address security issues") (citations omitted); *see also Aune v. Ludeman*, Case No. 09-cv-15 (JNE/SRN), 2009 WL 1586739, at *2 (D. Minn. June 3, 2009) (citing deference principles in the context of considering a civilly committed individual's motion for a preliminary injunction). The "courts should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." *Goff*, 60 F.3d at 521 (quoting *Rogers*, 676 F.2d at 1214).

### B. Benson's TRO Motion

Benson was placed in MSOP's Unit Omega 2 on December 8, 2016 "in response to a series of problematic behaviors" that included refusing to leave MSOP's High

Security Area ("HSA"). (Aff. of Jana Brister Korby ¶ 2, Ex. 1, at 1, ECF No. 45). On December 28, 2016, Benson's "behavioral issues had resolved" to allow his return to regular housing. (Korby Aff. ¶ 4). Benson, however, refused to leave Unit Omega 2. (Korby Aff. ¶ 2, Ex. 1, at 1). Benson was moved from Unit Omega 2 to Unit Omega 3 on June 23, 2017, "to create space for other MSOP clients whose behavioral problems warranted placements on Units Omega 1 & 2." (Korby Aff. ¶ 5).[3] Now, Benson refuses to leave Unit Omega 3 and return to regular housing. (Korby Aff. ¶ 6).

MSOP clients housed in Unit Omega 2 are permitted one storage bin of personal possessions. (Johnson Aff. ¶ 2, Ex. 1). MSOP clients housed in Unit Omega 3 or regular housing may have three storage bins of personal possessions and a television. (Johnson Aff. ¶ 2, Ex. 1). Before Benson was moved to Unit Omega 3, he was informed on May 2, 2017, that if he chose to remain in Unit Omega 2, he would need to be in compliance with the associated property restrictions. (Johnson Aff. ¶¶ 4–5).

Through his TRO Motion, Benson seeks to prevent the destruction of two property bins and a television pursuant to MSOP property retention policy. Benson's TRO Motion is based on the premise that he will lose property on August 2, 2017, 90 days following the May 2, 2017 notification. (TRO Motion, at 1). Benson has since been moved to Unit Omega 3, which has a less restrictive property policy than Unit Omega 2. Under the property policy of Unit Omega 3, Benson will not lose the property he seeks to protect in his motion. Accordingly, Benson's TRO Motion is moot. *See, e.g.*, *Pratt v. Corrections*

---

[3] The June 23, 2017 move date was contemplated as early as May 24, 2017, wherein MSOP staff, through Benson's Individualized Program Plan, planned to have Benson return to his regular housing or lose various privileges, such as contact visits and access to the gym. (Korby Aff. ¶ 2, Ex. 1, at 1).

6

*Corp. of America*, 267 F. App'x 482, 483 (8th Cir. 2008) (holding prisoner's claim for equitable and declaratory remedy was moot where prisoner was no longer subject to the challenged conditions); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (same); *Martin v. Sargent*, 780 F.2d 1334 (8th Cir. 1985) (same). Moreover, Benson himself concedes that his TRO Motion is moot in his memorandum accompanying his Amended TRO Motion. (ECF No. 50, at 2, 3, 7). Therefore, the Court recommends denying Plaintiff's Motion for Temporary Restraining Order, (ECF No. 33), as moot. Given the mootness as agreed by the parties, the Court need not analyze Defendants' remaining arguments that Benson's TRO Motion is not sufficiently related to his underlying claims or that it lacks merit.

### C. Benson's Amended TRO Motion

In his Amended TRO Motion, Benson seeks the following relief: enjoining Defendants from denying Benson access to religious services; enjoining Defendants from denying Benson access to the gym; and providing a stern warning to Defendants concerning retaliation. (Amended TRO Motion, at 1). The claims in the Amended TRO Motion expand upon Benson's underlying claims in his complaint, rather than denote any new emergency he faces. It appears Benson is attempting to add to his previously-pleaded claims.[4]

The claims Benson describes in his Amended TRO Motion mirror claims made in his complaint concerning religious activities and gym use. In his complaint, Benson

---

[4] Benson has already attempted to add claims in this lawsuit via responsive filings. (*See* ECF No. 32, at 3–6) (describing alleged retaliation Benson experienced as a result of this lawsuit).

7

alleges Defendants are "leveling special punishments and [using] the HSA/Omega Two units [to] deny [Benson's] access to his religion. (Compl. ¶10(o)). Benson asserts the following in his complaint: "On 6 July 2016 the Defendants accused the Plaintiff of being in an unauthorized area . . . . The Plaintiff was utilizing the gym with all other clients similarly situated. Plaintiff was told he was banned from using the gym as a special punishment." (Compl. ¶ 15). On July 17, 2016, Benson was removed from a sweat lodge ceremony in which he

> was told he was not on the approved list of clients allowed to attend the Ceremony. [Defendant Gordon] had the Plaintiff removed from the Ceremony by the A-Team. The Plaintiff was on the list and has always been on the list to participate in Native American Ceremonies. When the list was checked on . . . 18 July 2016, the Plaintiff's name was on the list and Plaintiff was told "we made a mistake." The Defendant refused to allow anyone to double check the Sweat Lodge list while the Ceremony was going, ensuring the Plaintiff would be removed from the Ceremony.

(Compl. ¶ 20). On December 3, 2016:

> Defendant Wyatt wrote a report for Plaintiff going to a Native American "sunrise ceremony" as part of his spirituality . . . . On 8 Dec 16, the BEU Defendants refused to acknowledge Plaintiff's right to his spiritual practices and stated that the denial of religious programming was part of the special punishments. Other clients similarly situated were allowed to participate in the ceremony, Plaintiff was singled out and targeted.

(Compl. ¶ 25). On December 4, 2016, Benson asserts he was written up for attending a Native American sweat lodge ceremony. (Compl. ¶ 26). And on December 5, 2016, Benson asserts he was written up for using the gym, while other MSOP clients were permitted access. (Compl. ¶ 27).

In his Amended TRO Motion, Benson alleges that all actions Defendants take are retaliatory by reason of his lawsuits against MSOP officials. For example, Benson claims

that an Individualize Program Plan treats him differently than others in Unit Omega 3, banning him from religious activities and the gym. (ECF No. 50, at 3). As discussed above, however, Defendants have submitted documentation that Benson refuses to leave Unit Omega 3 and return to his regular housing, resulting in various restrictions. Benson himself concedes this; instead, he shifts his argument to refusal to be placed in a "locked cell with a 'highly dangerous sex offender.'" (ECF No. 50, at 4).

As noted above, "[t]he burden [for a TRO] is especially heavy where . . . the moving party seeks not to maintain the status quo, but to obtain relief similar to that which it could obtain after a trial on the merits." *Brooks*, 881 F. Supp. 2d at 1049 (citing *Sanborn Mfg. Co.*, 997 F.2d at 486). Benson cannot meet the heavy burden for imposing a TRO. Foremost, Benson is not seeking to maintain a status quo in this litigation, but instead to obtain the relief he seeks in his underlying complaint. That is, Benson wants, at this very early stage of litigation, the Court to declare as retaliatory the activities of MSOP officials and allow him to use religious and gym facilities irrespective of his treatment counselors' recommendations. In granting this relief, the Court would be inserting itself into weighing the propriety of Benson's Individualized Program Plan and calling into question the judgment of his treatment providers. *Goff*, 60 F.3d at 521; *Rogers*, 676 F.2d at 1214. Such micro-management is not appropriate in a motion seeking emergency relief, particularly in the civil commitment setting. *See Senty-Haugen*, 462 F.3d at 887; *see also Aune*, 2009 WL 1586739, at *2.

Even if Benson did not face that hurdle, Benson has not met his burden for relief under the *Dataphase* factors at this stage in the litigation.

First, Benson points the Court to no irreparable harm. Rather, Benson adds to allegations in his complaint that he continues to suffer retaliation from MSOP staff as a result of his lawsuits. Benson does not outline any new emergency he faces. While the Court considers all four factors in *Dataphase*, the Eighth Circuit "has repeatedly emphasized the importance of a showing of irreparable harm." *Caballo Coal Co. v. Indiana Michigan Power Co.*, 305 F.3d 796, 800 (8th Cir. 2002) (citations omitted). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted); *see Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."). Further, "establishing a *risk* of irreparable harm is not enough. A plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'" *Taxpayers' Choice Volunteer Comm. v. Roseau Cty. Bd. of Comm'rs*, 903 F. Supp. 1301, 1308 (D. Minn. 1995) (quoting *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 225 (3d Cir. 1987)) (emphasis in original). "Possible or speculative harm is not enough to justify a preliminary injunction." *Carlson*, 958 F. Supp. 2d at 1058.

As discussed herein, Benson refuses to leave Unit Omega 3 and return to regular housing. Because of this MSOP has placed him on an Individualized Program Plan that provides various restrictions. Thus, it appears Benson's alleged injuries stem, at least somewhat, from his own actions. There is no indication that absent Benson's voluntary actions MSOP staff would be limiting his access to religious or gym facilities.

Accordingly, Benson has failed to show irreparability and the inadequacy of legal remedies.

Second, while the Court notes the pleadings are in the early stages, it is unlikely Benson will succeed on the merits. From the facts already provided, Benson is subject to an Individualized Program Plan by reason of refusing to return to regular housing. Of note, Benson is not pursuing in his Amended TRO Motion the full breadth of claims asserted in his underlying complaint. Regarding his religious claims, Benson must allege that Defendants have "placed a 'substantial burden' on his ability to practice his religion." *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). "Substantial burden" means that Defendants' regulation

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Id.* (quoting *Murphy v. Mo. Dept. of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004)). Benson points the Court to one instance over a five-month period in which he was prevented from attending a religious ceremony. For the other two examples he provides, Benson only asserts that a report was written because he attended ceremonies in December 2016. Benson's own allegations acknowledge that he has had at least some access to these religious ceremonies. Accordingly, Benson has not alleged that Defendants have placed a *substantial* burden on his ability to practice religion.

Even if a regulation imposes a substantial burden, it passes constitutional muster "if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S.

78, 89 (1987); *Ivey v. Mooney*, Case No. 05-cv-2666 (JRT/FLN), 2008 WL 4527792, at *5 (D. Minn. Sept. 30, 2008) (modifying the *Turner* factors in the MSOP context to whether the regulation is "reasonably related to legitimate institutional and therapeutic interests"); *see Ortiz v. Fort Dodge Corr. Facility*, 368 F.3d 1024, 1026 (8th Cir. 2004) (describing four factor test courts use to make determination). From the record before the Court, Benson is subject to an Individualized Program Plan which limits his access to certain MSOP activities. As noted herein, the Court will not question the institutional and therapeutic interests of the Individualized Program Plan at this point in the litigation. Accordingly, Benson is unlikely to succeed on his First Amendment religious claims.

Regarding his gym access claim, it appears to fall under Benson's general First Amendment retaliation claim. In order to

> establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.

*Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (citation omitted). "Under the third prong, a plaintiff must show that the retaliatory motive was a 'substantial factor' or 'but-for cause' of the adverse action." *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cor. 2004) (citation omitted). Here, Benson asserts his access to the gym was restricted as a punishment for engaging in a protected activity—filing a lawsuit. Benson does not allege, however, that being denied access to the gym would "chill a person of ordinary firmness from continuing in the activity." *See Cotton v. Hutto*, 540 F.2d 412 (8th Cir. 1976)

(upholding dismissal of case prior to service where, among other allegations, prisoners alleged constitutional violation in having no gym privileges); *see also Calatayud v. Townley*, 2015 WL 514594, at *6 (S.D. Ill. Feb. 6, 2015) (describing, among other things, a 2–month deprivation of access to the gym/yard as a "relatively mild level of discipline" not enough to rise to the level of suffering a deprivation or adverse action likely to deter protected speech); *Carter v. Hillsborough Cty. Dept. of Corr.*, 2013 WL 6327993, at *2 (D.N.H. Dec. 5, 2013) (describing adverse acts of being barred from gym and using weights in retaliation for filing a grievance as *de minimis*). Moreover, from the record presently before the Court, Benson is subject to an Individualized Program Plan which limits his access to certain MSOP activities, such as the gym. As noted herein, the Court will not question the institutional and therapeutic interests of the Individualized Program Plan at this point in the litigation. Accordingly, Benson is unlikely to succeed on his First Amendment retaliation claim concerning denying access to the gym.

Fourth, the public interest and balance of harms weighs against granting a TRO in this context. When balancing harms, the balance must tip "decidedly in favor" of the requesting party. *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1184 (8th Cir. 1998). The harms here do not tip decidedly in Benson's favor. In granting Benson's Amended TRO Motion, the Court would be getting involved in weighing the propriety of Benson's Individualized Program Plan and calling into question the judgment of his treatment providers. *Goff*, 60 F.3d at 521; *Rogers*, 676 F.2d at 1214. Such insertion into the management of civilly committed persons is not appropriate in an injunction motion wherein the Court does not have a developed factual record. *See Senty-Haugen*, 462 F.3d

at 887; *see also Aune*, 2009 WL 1586739, at *2. While courts may entertain claims of past abuse or unconstitutional actions, absent a clear threat of imminent and irreparable harm, this Court will not recommend granting the extraordinary injunctive relief requested.

## III. A STAY IS APPROPRIATE

Benson's present case is intertwined with his previous case, *Michael D. Benson v. Emily Johnson Piper, et al.*, Case No. 16-cv-509 (DWF/TNL), in that he alleges retaliation as a result of filing that case. That case is currently stayed pending resolution of *Karsjens, et al. v. Piper, et al.*, Case No. 11-cv-3659 (DWF/TNL). (ECF No. 53, Case No. 16-cv-509). Regardless of whether the acts allegedly committed by Defendants are a result of retaliation, the acts substantially mirror the claims in myriad lawsuits filed by MSOP clients in this District concerning their treatment, including Benson himself.[5] Such claims are, at least in part, subject to class action litigation pending in this District.

The *Karsjens* case involves a class of persons civilly committed to MSOP asserting that the MSOP statutory scheme is unconstitutional because of the duration and nature of commitment. (*Karsjens* Third Amended Compl. ¶ 1, Case No. 11-cv-3659 (DWF/TNL), ECF No. 635). Included alongside those allegations are various conditions-of-confinement-type claims, including that MSOP patients undergo unwarranted and unreasonable searches, are subjected to unreasonable property limitations, have restrictive visitation policies, and face religious restrictions. (*Karsjens* Third Amended

---

[5] In fact, in his other lawsuit, Benson alleged that MSOP's actions were retaliatory after he violated the badge policy. *See* note 1, *supra*. Thus, on its face, Benson appears frequently to label the adverse consequences he faces at MSOP as retaliation to his own actions.

14

Compl. ¶¶ 155–62, 173–83, 201–05). The class seeks to enjoin MSOP from engaging in these or similar practices. (*Karsjens* Third Amended Compl., at 85). Benson, as an individual civilly committed to MSOP, is a member of the class. (Order Certifying Class, at 11, Case No. 11-cv-3659 (DWF/TNL), ECF No. 203).

In cases with similar claims, defendants, and classes, courts follow the "first-filed rule," in which the court that "initially seized" the controversy generally "should be the one to decide the case." *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985) (quotation and citation omitted). Such a rule "promote[s] efficient use of judicial resources." *Id.* But the "rule is not intended to be rigid, mechanical, or inflexible," instead, it "should be applied in a manner serving sound judicial administration." *Id.* In the absence of compelling circumstances, the first-filed rule should apply. *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488–89 (8th Cir. 1990).

While Benson has not filed a class action claim in this case, the first-filed rule is instructive. Benson is a class member in the earlier-filed *Karsjens* suit that, in part, challenges various policies implemented at MSOP.[6] The *Karsjens* case is assigned to the same District and Magistrate Judges that are assigned to Benson's two cases. Thus, any time spent resolving the challenges in this case would be "duplicated effort" and "wasted

---

[6] *Karsjens* was divided into two phases: Phase I concerned the constitutionality of the Minnesota Civil Commitment and Treatment Act ("MCTA"); and Phase II concerned various conditions-of-confinement type claims. (June 17, 2015 Findings of Fact, Conclusions of Law, and Order, ECF No. 966). The District Court held the MCTA unconstitutional following a bench trial on Phase I. That decision was reversed on appeal. *Karsjens v. Piper*, 845 F.3d 394 (8th Cir. 2017). The Eighth Circuit remanded for further proceedings on Phase II claims. *Id.* at 411. An appeal to the United States Supreme Court is pending as of the date of this Report and Recommendation.

15

resources." *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 389 (D. Minn. 2013). Because some of Benson's present claims are sufficiently related to the challenges being litigated in *Karsjens*, this Court concludes a stay is warranted. Thus, this Court recommends that this matter be stayed pending the resolution of the *Karsjens* litigation or until further order of this Court, alongside Benson's other pending lawsuit.

## IV. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Temporary Restraining Order, (ECF No. 33), be **DENIED AS MOOT**.

2. Plaintiff's Motion for Amended Temporary Restraining Order, (ECF No. 49), be **DENIED**.

3. This matter be **STAYED** in all respects pending the litigation in *Karsjens* or until further order of this Court stating otherwise.

Date: July 31, 2017           *s/ Tony N. Leung*
                              Tony N. Leung
                              United States Magistrate Judge
                              District of Minnesota

                              *Benson v. Piper et al.*
                              Case No. 17-cv-266 (DWF/TNL)

### NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).