# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Michael D. Benson,

        Plaintiff,

v.

Emily Johnson Piper[1], Comm. of the Dept. of
Human Services; Shelby Richardson, MSOP
Dir.; Kevin Moser, Fac. Dir.; Terry Kniesel,
Asst. Fac. Dir.; Steve Sadjak, Asst. Fac. Dir.;
Rich O'Conner, Super.; Steve Sayovitz, Super.;
Ron Fischer, Super.; Nate Johnson, Super.;
Mike Goeglein, Super.; Scott Benoit, Man.;
Lori Aldrin, Off. of the Day; Julianna Beavens,
Off. of the Day; Ryan Fahland, Asst. Super.;
Randy Gordon, Asst. Super.; Andrea Kosloski,
Unit 1-B Dir.; Brian Ninneman, Unit 1-C Dir.;
Robert Rose, Unit 1-C Dir.; Kathryn Schesso,
Clin. Super.; Jana Korby, Clin. Super.; Tara
Osbourne, Clin. Super.; Nicole Vaineo, Clin.
Ther.; Kyle Randa, Sec. Couns. Lead; Elizabeth
Wyatt, Sec. Couns. Lead; Derrick Koecher, Sec.
Couns. Lead; Scott Gianinni, Sec. Couns.;
Brennan Shorter, Sec. Couns.; Blake Carey, Sec.
Couns.; Gordon Huhta, Sec. Couns.; Robert
Grescyzk Jr., Sec. Couns.; Wendy McGowan,
Sec. Couns.; Barry Giersdorf, Sec. Couns.; Chris
St. Germain, Sec. Couns.; Jordan Goodman, Sec.
Couns.; Sam Brindamor, Sec. Couns.; Bruce
Lind, Sec. Couns.; Travis Cowell, Sec. Couns.;
Jenny Collelo, Sec. Couns.; and Paul Michelizzi,
Sec. Couns., in their individual and official capacities,

        Defendants.

Civil No. 17-266 (DWF/TNL)

**ORDER ADOPTING REPORT
AND RECOMMENDATION**

---

[1]     Tony Lourey replaced Emily Johnson Piper as Commissioner of the Department
of Human Services.  He is therefore substituted for Johnson Piper in Plaintiff's official
capacity claims.  *See* Fed. R. Civ. P. 25(d).

This matter is before the Court upon Defendants' objections (Doc. No. 67 ("Defs.' Obj.")) and Plaintiff's objections (Doc. No. 70 ("Plaintiff's Obj.")) to Magistrate Judge Tony N. Leung's January 25, 2019 Report and Recommendation (Doc. No. 65 ("Report and Recommendation")). Defendants filed a response to Plaintiff's objections on March 15, 2019.[2] (Doc. No. 74.) Plaintiff did not file a response to Defendants' objections.

Defendants object to the Report and Recommendation insofar as it recommends that Defendants' motion to dismiss be denied with respect to: (1) Plaintiff's Fourth Amendment claims against Defendants Wyatt, Beavens, Shorter and Fisher related to alleged unclothed visual body searches on December 6 and 7, 2016; (2) Plaintiff's Fourteenth Amendment procedural due process and related supervisory claims against Defendants Wyatt, Beavens, Fischer, Shorter, Gianinni, Johnson, Brindamor, Aldrin, Lind, Goeglien, Korby, Schesso, Cowell, Cellelo, Johnson Piper, Richardson, Moser, Kniesel, Sadjak, Benoit, and Kosloski related to Plaintiff's alleged placements in high security area ("HSA"); and (3) Plaintiff's claim for punitive damages with respect to all Defendants other than McGowan and Kosloski.[3] Plaintiff objects to the Report and Recommendation insofar as it recommends dismissal of Plaintiff's substantive due

---

[2]     On February 28, Plaintiff filed a *pro se* self-styled Motion Requesting a Continuation to Respond on Judge Magistrate's Report and Recommendation. (Doc. No. 69). The Court granted Plaintiff's motion and directed the parties to submit responses to the objections by March 19, 2019. (Doc. No. 73.)

[3]     Defendants do not contest the recommendation as it pertains to Defendants McGowan and Kosloski. (*See* Doc. No. 67 ("Defs.' Opp. at 11-12.)

process claims related to his placements in HSA; and his First Amendment Claims related to his free exercise of religion.

The Court has conducted a *de novo* review of the record, including a review of the arguments and submissions of counsel, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b). The factual background for the above-entitled matter is clearly set forth in the Report and Recommendation and is incorporated by reference here. The Court notes particular facts relevant to this Order below.

In the Report and Recommendation, Magistrate Judge Leung recommended the following conclusions: (1) Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed without prejudice for lack of jurisdiction; (2) Plaintiff's claims based on the Minnesota Constitution be dismissed with prejudice; (3) Plaintiff's official-capacity claims be dismissed without prejudice; (4) Plaintiff's First Amendment claims be dismissed without prejudice, except for his retaliation claims against Defendants McGowan and Kosloski, including but not limited to Kosloski's participation in the search of Plaintiff's room; (5) Plaintiff's Fourth Amendment claims be dismissed without prejudice, except as to Defendants Wyatt, Beavens, Shorter, and Fisher, based on the unclothed visual body searches on December 6 and 7, 2016; (6) Plaintiff's Fourteenth Amendment claims be dismissed without prejudice, except as to Defendants Wyatt, Beavens, Gianinni, Fischer, Johnson, Brindamor, Aldrin, Lind, Goeglein, Korby, Schesso, Shorter, Cowell, and Cellelo for procedural due process based on Plaintiff's placement in HSA on December 6 and 7, 2016; and (7) Plaintiff's supervisory claims be dismissed without prejudice, except as to Defendant Kosloski in

connection with Plaintiff's First Amendment Claims, and to Defendants Johnson Piper, Richardson, Moser, Kniesel, Sadjak, Benoit, and Kosloski in connection with Plaintiff's Fourteenth Amendment procedural due process claims.

Defendants object to Magistrate Judge Leung's recommendation to decline dismissal of Plaintiff's Fourth Amendment claim against Defendants Wyatt, Beavens, Shorter, and Fischer related to alleged unclothed visual body searches on December 6 and 7, 2016. According to Defendants, the claims should have been dismissed because the Fourth Amendment prohibits only "unreasonable searches" and the unclothed visual body searches were reasonable under the circumstances.

Defendants also object to the Magistrate Judge's recommendation to decline dismissal of Plaintiff's Fourteenth Amendment procedural due process claim against Defendants Wyatt, Beavens, Gianinni, Fischer, Johnson, Brindamor, Aldrin, Lind, Goeglein, Korb, Schesso, Shorter, Cowell, and Collello based on Plaintiff's placement in HSA on December 6 and 7, 2016. Defendants argue that Plaintiff was not denied due process because his placement in HSA was not a punishment and because each placement was sufficiently short as not to warrant atypical and significant hardship. Defendants argue further that because there was no underlying procedural due process violation, any related supervisory claim should also be dismissed. If the underlying procedural process claims are not dismissed, Defendants contend that related supervisory claims against Defendants Johnson Piper, Richardson, Kniesel, Sadjak, Moser, Benoit, and Kosloski should be dismissed nonetheless because the allegation connecting them to the alleged due process violations is a single conclusory statement that is insufficient to plead a

supervisory claim.  Moreover, Defendants argue that the supervisory claims against Defendants Johnson Piper and Richardson should be dismissed because they lacked sufficient oversight of HSA hearing requirements or related MSOP policies of HSA to provide a basis for supervisory liability.

Defendants also object to the Magistrate Judge's recommendation that Defendants are not entitled to qualified immunity in connection with the unclothed visual body searches and HSA placements on December 6 and 7, 2016.  They argue that even if Plaintiff could state Fourth or Fourteenth Amendment claims, they are nonetheless entitled to qualified immunity because they did not violate Plaintiff's clearly established constitutional rights.  They contend that caselaw establishes that placing a client in HSA and conducting an unclothed visual body search for a security reason is not a constitutional violation.

Finally, Defendants object to Magistrate Judge Leung's recommendation to decline to dismiss Plaintiff's claim for punitive damages with respect to all defendants other than Defendants McGowan and Kosloski.  Defendants contend that Plaintiff fails to sufficiently allege evil motive or callous indifference.

Plaintiff objects to Magistrate Judge Leung's recommendation to dismiss Plaintiff's Fourteenth Amendment substantive due process claim.  Plaintiff argues that the Magistrate Judge applied the wrong standard to conclude that Plaintiff's constitutional rights were not violated when he was placed in HSA.  Specifically, Plaintiff contends that the Magistrate Judge should have applied the "professional-judgment" standard instead of the "shocks the conscience" standard.

Plaintiff argues that his constitutional rights were violated when he was placed in HSA because defendants did not exercise professional judgment when they determined that HSA was appropriate.

Plaintiff also objects to the Magistrate Judge's recommendation to dismiss his First Amendment claims related to his free exercise of religion. Plaintiff argues that the Magistrate Judge should have looked beyond the four corners of his Complaint to conclude that Defendants have retaliated against him by denying him his constitutional right to exercise religion.

## I.      First Amendment Claim

Plaintiff alleges that his religious freedom was infringed when he was removed from one Native American ceremony and written up for attending two others. (Doc. No. 1. ("Compl.") ¶¶ 20, 25-26.) Magistrate Judge Leung recommended dismissing Plaintiff's First Amendment claim because Plaintiff failed to allege facts plausibly establishing that his religious exercise was substantially burdened. (Report and Recommendation at 28.) The Court agrees.

As the Magistrate Judge correctly observed, "'[t]o find a substantial burden, the court must determine that the challenged practices: (1) significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; (2) meaningfully curtail a person's ability to express adherence to his or her faith; or (3) deny a person reasonable opportunities to engage in those activities that are

fundamental to a person's religion.'"  (*Id*. at 26-27 (quoting *Karsjens v. Piper*, 336 F. Supp. 3d 974, 991 (D. Minn. 2018) (internal quotation marks omitted)).)

The Court agrees with the Magistrate Judge's determination that the three incidents alleged in Plaintiff's complaint fail to show a substantial burden on Plaintiff's ability to express adherence to his religious beliefs.  Plaintiff argues that the Magistrate Judge should have considered "the custom of the locality" to conclude that Plaintiff's ability to exercise his faith was substantially burdened by Defendants' attempt to intimidate, isolate, and deprive Plaintiff of his constitutional rights. (Doc. No. 70 ("Plaintiff's Obj.") at 14).  Plaintiff describes these attempts in both his response to Defendants' motion to dismiss (Doc. No. 32 at 3-6), and his objection to the Response and Recommendation (Plaintiff's Obj. at 11-14).  Defendants contend that these allegations are not properly before the Court and request that they not be considered.

"It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.  To hold otherwise would mean that a party could unilaterally amend a complaint at will."  *Morgan Distrib. Co. v. Unidymanic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (internal citation omitted).  The Court recognizes that the Plaintiff is a *pro se* litigant, and therefore grants him a certain degree of latitude.  *See Machen v. Iverson*, Civ. No. 11-1557, 2012 WL 566977, at *15 (D. Minn. Jan. 23, 2012), *report and recommendation adopted*, 212 WL 5672128 (D. Minn. Feb. 21, 2012).  Nonetheless, the Court agrees with the Magistrate Judge that it is unclear from the additional allegations which of the Defendants were involved in the acts complained of, or if the claims are entirely new or supplementing existing ones.  The Court agrees with the Magistrate

Judge's determination to consider only the allegations in the Complaint, and adopts his recommendation to dismiss Plaintiff's First Amendment claim for the reasons stated above.[4]

## II.    Fourth Amendment Claim

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV.  "A search occurs under the Fourth Amendment when . . . 'the government violates a subjective expectation of privacy that society recognizes as reasonable.'"  *Arnzen v. Palmer*, 713 F.3d 369, 372 (8th Cir. 2013) (quoting *Kyllo v. United States*, 533 U.S. 27, 31-33 (2001)).  "[I]nvoluntarily committed civilly committed persons retain the Fourth Amendment right to be free from unreasonable searches that is analogous to the right retained by pretrial detainees."  *Beaulieu v. Ludeman*, 690 F.3d 1017, 1028 (8th Cir. 2012) (citing *Serna v. Goodno*, 567 F.3d 944, 948-49 (8th Cir. 2009)).  And, "'[a]lthough an involuntarily committed patient of a state hospital is not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner.'"  *Id.* (quoting *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004).  To determine "reasonableness" in an institutional setting, a court must balance "the need for the particular search against the invasion of personal rights that the search entails."  *Bell v. Wolfish*, 441 U.S. 520, 559 (1979); *accord Serna*, 567 F.3d at 949, 952-56.  "Courts must consider the scope of the particular intrusion, the manner in which it is conducted,

---

[4]    Plaintiff may file a motion to amend his Complaint in compliance with Local Rule 15.1.

the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559; *accord Serna*, 567 F.3d at 952-53.

"In *Beaulieu*, the Eighth Circuit upheld the MSOP's unclothed visual body search policy under the facts of that case." *Karsjens*, 336 F. Supp. 3d at 995 (citing 690 F.3d at 1030); *see also Serna*, 567 F.3d at 952-55. "Evaluating the constitutionality of such searches, however, is a fact-dependent inquiry." *Karsjens*, 336 F. Supp. 3d at 995; *see, e.g.*, *Bell*, 441 U.S. at 559; *Beaulieu*, 690 F.3d at 1027-30; *Serna*, 567 F.3d at 949-56; *Yazzie v. Moser*, Civ. No. 12-399, 2014 WL 3687102, at *8-9 (D. Minn. June 11, 2014), *objections sustained in part and overruled in part*, 2014 WL 3687110 (D. Minn. July 24, 2014); *Allan v. Ludeman*, Civ. No. 10-176, 2011 WL 978768, at *4 (D. Minn. Jan. 18, 2011), *adopting report and recommendation*, 2011 WL 978658 (D. Minn. Mar. 17, 2011).

Here, Plaintiff alleges a Fourth Amendment claim based on two unclothed visual body searches, one on December 6, and one on December 7, 2016. (Compl. ¶¶ 34, 42.) Each preceded his placement in the HSA. (*Id.* ¶¶ 34, 42.) One search was conducted by Defendants Wyatt and Beavens; the other was conducted by Defendants Shorter and Fischer. (*Id.* ¶¶ 34, 42.) For each search, Plaintiff alleges that Wyatt, Beavens, Shorter, and Fischer refused to remove his handcuffs until he complied with the search; he was not exhibiting dangerous and uncontrolled behavior at the time he was searched and placed into the HSA; and various reports confirm that he was not exhibiting such behavior. (*Id.* ¶¶ 34, 42, 68, 74; *see id.* ¶ 46.)

As Magistrate Judge Leung correctly observed in the Report and Recommendation, "any claim on the use of unclothed visual body searches 'turns in part on the extent to which th[e] Court has sufficient expertise and information in the record to mandate, under the Constitution, the specific restrictions and limitations sought by those who challenge the visual search procedures at issue.'" (Report and Recommendation at 39 (citing *Florence v. Bd. of Chosen Freeholders of the Cty. of Burlington*, 566 U.S. 318, 322 (2012); *accord Beaulieu*, 690 F.3d at 1028).) The Court affirms that, "'[i]n addressing this type of constitutional claim[,] courts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of [institutional] security.'" (*Id.* citing *Florence*, 566 U.S. at 322-23; *accord Beaulieu*, 690 F.3d at 1028.)

Defendants argue that Plaintiff's claim must be dismissed because the searches were reasonable under the circumstances. (Defs.' Object. at 3.) They contend that while Plaintiff alleges he was not acting dangerously or exhibiting out of control behavior at the time of the HSA placements and subsequent unclothed visual body searches, Plaintiff admits that he was not following staff directives. (*Id.*; *see* Compl. ¶¶ 34-37, 42-44.) Defendants argue that failing to follow staff directives poses a "risk to institutional security" and that the searches were reasonable because they were conducted for a legitimate security purpose. (*Id.* (citing *Beaulieu*, 690 F.3d at 1028-29).)

The Supreme "Court has confirmed the importance of deference to correctional officials and explained that a regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" *Florence*,

566 U.S. at 326 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *accord Beaulieu*, 690 F.3d at 1029. Nonetheless, "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559.

Here, the record does not provide sufficient information for the Court to conclude that the Plaintiff has failed to state a claim. "[S]trip searches conducted at MSOP facilities may or may not be reasonable, and thus may or may not be constitutional, depending on the circumstances." *Allan*, 2011 WL 978768, at *4. While Defendants argue that failure to obey directives automatically poses a a risk to institutional security, the Court is unpersuaded. Without additional information regarding the specific directives and the context surrounding them, the Court simply does not have enough information to balance the necessity of the searches against the invasion of personal rights that that the searches entailed. *Bell*, 441 U.S. at 559. While discovery may yield that the searches were reasonable because Plaintiff's failure to follow legitimate staff directives posed a genuine risk to institutional security, Plaintiff alleges that the searches were unreasonable and unnecessary. At this point in the proceedings, the Court assumes all of the allegations in the Complaint are true and construes all reasonable inferences in the light most favorable to the Plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). Thus, the Court agrees with the Magistrate Judge's conclusion that Plaintiff has plausibly alleged a violation of his Fourth Amendment Rights and adopts his recommendation to deny Defendants' motion to dismiss.

**III.     Fourteenth Amendment Procedural Claims**

To state a procedural due process claim, a plaintiff must demonstrate:  (1) the existence of a constitutionally protected liberty or property interest; and (2) that the defendant deprived the plaintiff of that interest without constitutionally adequate process. *See Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013); *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817 (8th Cir. 2011).  The protected liberty interests of civilly committed individuals are analogous to those of pretrial detainees.  *See Yazzie*, 2014 WL 3687102, at *2 (D. Minn. July 24, 2014).  "The federal constitution requires that both civil detainees and pretrial detainees be afforded procedural due process protections before they are subjected to punishment."  *Meyer v. O'Keefe*, Civ. No. 03-5251, 2004 WL 2212091, at *3 (D. Minn. Sept. 30, 2004).  The threshold inquiry, therefore, is whether Plaintiff was punished.  (*See id.*)  Not all restrictions imposed in the civil commitment context will amount to punishment.  *See Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).  Specifically, "if a particular condition or restriction . . . is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"  *Id.* (citation omitted).  Such a legitimate governmental objective may include maintaining safety and order in a facility.  *See, e.g.*, *Meyer*, 2004 WL 2212091, at *3.

Plaintiff alleges a violation of the Fourteenth Amendment's due process clause based on being detained in HSA on December 6 and December 7.   Plaintiff alleges that he was not exhibiting any dangerous or uncontrolled behavior on either occasion. (Compl. ¶¶ 10(m), 34, 42.)  The only "perceived uncontrollable dangerous behavior"

described is that he was "refusing to accept or allow [the Defendants] to punish him, claiming this is out of control behavior." (*Id.* ¶¶ 34-37, 42-44.) Plaintiff alleges that various reports generated in connection with his placement in HSA demonstrate that his conduct did not warrant such placement. (*See, e.g.*, *Id.* ¶¶ 38, 46.) He further alleges that prior to each placement, he was "handcuffed, strip-searched and placed in the [HSA]." (*Id.* ¶¶ 34, 42.) Plaintiff contends that "[t]he Defendants are using the HSA for their convenience which is explicitly prohibited by policy."[5] (*Id.* ¶ 42.) Finally, Plaintiff alleges that "[a]t no time was [he] afforded the opportunity to challenge the basis for his detention or access to any evidence that justified the detention." (*Id.* ¶¶ 10(m), 36-37, 42- 44.)

The Magistrate Judge recommended that the Court deny Defendants' motion to dismiss Plaintiff's procedural due process claims based on the December 6 and 7, 2016 HSA placements because he concluded that Plaintiff's placements amounted to punishment and that he was denied due process because he was not provided an opportunity to be heard in relation to the placements. (Report and Recommendation at 50.) The Magistrate Judge's conclusion was based on Plaintiff's allegations that (1) his conduct did not justify placement in HSA due to safety or security concerns; (2) such detention amounted to punishment under the circumstances; and (3) he was denied an opportunity to be heard. (*Id.* at 49.)

---

[5]     Plaintiff alleges that MSOP Policy 415-5085 explicitly prohibits MSOP staff from using HSA for their convenience. (Compl. ¶ 34; *see* Compl. ¶¶ 10(h), 42.)

Defendants argue that the Magistrate Judge's recommendation is incorrect because Plaintiff did not actually allege that he was placed in HSA as a form of punishment, but because he was refusing to follow staff directives by "refusing to accept or allow [Defendants] to punish him." (Defs.' Obj. at 5; *see* Compl. ¶¶ 34-37, 42-44.) Defendants further argue that Plaintiff did not allege that his placements in HSA were ever determined to be inappropriate, but that he was released only when MSOP staff determined that he was no longer "threatening the safety and security of the facility." (*Id*; *see* Compl. ¶¶ 38, 46.) Therefore, Defendants contend that Plaintiff's actual allegations demonstrate that Plaintiff was refusing to comply with staff directives at the time of, and subsequent to his HSA placements. (Defs.' Obj. at 6.) Accordingly, Defendants argue that Plaintiff was not placed in HSA as "punishment" but was placed there in connection with the legitimate interest of security and managing the facility. (*Id.* (citing *Hall v. Ramsey Cnty.*, 801 F.3d 912, 919 (8th Cir. 2015)).)[6] Consequently, Defendants contend that Plaintiff's liberty interest under the due process clause was not implicated and his claims should be dismissed. (Defs.' Memo. at 6.)

The Court finds that a fair reading of Plaintiff's allegations implicates the use of HSA placement as a form punishment and that Plaintiff was not provided an opportunity to contest the validity of the placements. Specifically, Plaintiff alleges that he was not exhibiting any dangerous or uncontrolled behavior to warrant placements in HSA on

---

[6]     In *Hall*, there was video footage that showed a plaintiff's disruptive behavior, visible anger, and uncooperative behavior. 801 F.3d at 919. Here, the record is unclear with respect to the context leading up to Plaintiff's placements in HSA.

either occasion. (Compl. ¶¶ 10(m), 34, 42.). He contends that HSA was used by Defendants out of convenience. (*Id.* ¶ 42.) It is clear from Plaintiff's allegations that he believes his placements in HSA were unnecessary and unwarranted. Unnecessary and unwarranted placement in HSA can reasonably be construed as punishment. As discussed above, at this point in the proceedings, the Court assumes that all of the allegations in the Complaint are true and construes all reasonable inferences in the light most favorable to the Plaintiff. *Morton,* 793 F.2d at 187. While discovery may provide that Plaintiff's HSA placements were in the legitimate interest of security and managing the facility, it is too soon for the Court to reach this conclusion at this point in the proceedings.

Defendants argue further that even if Plaintiff was deprived of a liberty interest, he is not entitled to procedural due process protections because his HSA placements were not an "atypical and significant hardship . . . in relation to the ordinary incidents of [confined] life." (Defs.' Obj. at 7 (citing *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quotation omitted)).) Defendants' argument is based on other courts' rulings that placement in segregation, even without cause, does not necessarily constitute atypical and significant hardship. *See, e.g.*, *Holly v. Anderson*, Civ. No. 04-1489, 2018 WL 1773093, at *7-*8 (D. Minn. Apr. 15, 2008) (finding that MSOP client's eight-day placement in administrative restriction without a hearing was not an "atypical and significant hardship" and did not violate procedural due process); *Larson v. Jesson*, Civ. No. 11-2247, 2018 WL 3352926, at * 4 (D. Minn. July 9, 2018) (stating that "[p]lacement in segregation,

'even without cause, is not itself an atypical and significant hardship.'" (quoting *Phillip v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)).)

There is no established baseline from which to measure what is atypical and significant in any particular prison system. *Wilkinson*, 545 U.S. at 223. The Court can imagine a scenario where repeated placements in HSA as punishment without cause, even for a short duration, could pose an atypical and significant hardship. At this point in the proceedings, though, the Court simply does not have enough information to determine whether Plaintiff's confinements were insufficiently atypical or significant. Therefore, the Court cannot conclude that Plaintiff has failed to plausibly allege a violation of his Fourteenth Amendment procedural due process protections and adopts the Magistrate Judge's recommendation to deny Defendants' motion to dismiss.

Because the Court finds that Plaintiff has plausibly alleged a violation of his Fourteenth Amendment procedural due process protections, the Court also finds no reason to depart from the Magistrate Judge's factually and legally correct recommendation to decline dismissing Plaintiff's related supervisory claims.

Defendants argue that whether or not underlying procedural due process violations exist, the Magistrate Judge erred by failing to recommend dismissal of supervisory claims against Defendants Johnson Piper, Richardson, Kniesel, Sadjak, Moser, Benoit, and Kosloski because Plaintiff's allegation connecting them to the alleged due process violations is a single conclusory statement. (Defs.' Obj. at 8 (citing *Jackson v. Nixon*, 747 F.3d 537, 545 (8th Cir. 2014).)

The Court observes that Plaintiff's allegation names each Defendant and includes a detailed description of perceived due process violations, including the statement that "[d]efendants have refused to allow for hearings or implement procedures to protect Plaintiff's rights." (Compl. ¶ 12.) Granting deference to Plaintiff as a *pro se* litigant and construing all reasonable inferences in his favor, the Court finds that Plaintiff has plausibly alleged Defendants Johnson Piper, Richardson, Kniesel, Sadjak, Moser, Benoit, and Kosloski's involvement in denial of his due process rights. *Morton,* 793 F.2d at 187.

Moreover, Defendants contend that the Magistrate Judge erred when he declined to recommend dismissing supervisory claims against Defendants Johnson Piper and Richardson because there is insufficient statutory authority to support the claims against them. (Defs.' Obj. at 8 (citing *Jackson*, 747 F.3d at 545).) Specifically, they contend that the statutes that the Magistrate Judge relied on do not establish any specific oversight of the HSA hearing requirements or related MSOP policies.[7] (*Id.*) At this point in the proceedings, the Court finds no reason to depart from the Magistrate Judge's recommendation.

The Magistrate Judge correctly stated that "statutory duties may be sufficient to give rise to § 1983 liability when the state actors are those who truly administer the challenged programs." *Pittman v. Jesson*, Civ. No. 12-1410, 2014 WL 4954286, at *15 (D. Minn. Sept. 30, 2014); *see Jackson*, 747 F.3d at 544.

---

[7] The Magistrate Judge concluded that Minn. Stat. §§ 246B.04, subd. 1, and 246B.03, subd. 3(a), created supervisory liability for Defendants Johnson Piper and Richards, respectively.

The Magistrate Judge relied on Minn. Stat. § 246B.04, subd. 1, to conclude that as Commissioner of DHS, Defendant Johnson Piper has supervisory liability because she has a statutory duty to "'adopt rules to govern the operation, maintenance, and licensure of secure treatment facilities operated by the Minnesota sex offender program or at any other facility operated by the commissioner, for a person committed as a sexual psychopathic personality or a sexually dangerous person.'" (Report and Recommendation at 62 (quoting Minn. Stat. § 246B.04, subd. 1).) Similarly, the Magistrate Judge relied on Minn. Stat. § 246B.03, subd. 3(a), to conclude that Defendant Richardson has supervisory liability because, as the Executive Director of MSOP, she has a statutory duty to "'establish a grievance policy and related procedures that address and attempt to resolve civilly committed sex offender concerns and complaints.'" (*Id.* (quoting Minn. Stat. § 246B.03, subd. 3(a)).)

While discovery may show that Defendants Piper Johnson and Richardson lack specific oversight of the creation or implementation of the policies related to Plaintiff's procedural due process claim, the Court agrees with the Magistrate Judge's determination that there is sufficient statutory authority to sustain the claims against them at this point in the proceeding.

## IV. Fourteenth Amendment Substantive Due Process Claim

Magistrate Judge Leung recommended denying Plaintiff's Fourteenth Amendment substantive due process claims related to his placements in HSA because Plaintiff failed

to allege facts that his placement in HSA were so egregious or outrageous as to shock the conscience. The Court agrees.

The Magistrate Judge first determined that the *Youngberg* "professional-judgement" standard did not apply because Plaintiff's placement in HSA did not involve actual physical restraint. *See Youngberg v. Romeo*, 457 U.S. 307, 319-320 (1982) (pursuant to this test, great deference is owed to the professional judgment of a qualified professional charged with balancing the plaintiff's freedom from bodily restraint against the safety of the public, the plaintiff, and other patients). He then concluded that Plaintiff's temporary placements in HSA failed to shock the conscience. (Report and Recommendation at 57.)

Plaintiff argues that the Magistrate Judge should have applied the "professional judgment standard" instead of the "shocks the conscience standard."[8] He contends that under that analysis, his substantial due process claim related to his placements in HSA survives.[9] (Plaintiff's Obj. at 2-5.)

---

[8]    Plaintiff also cites *Kingsley v. Henrickson*, 135 S. Ct. 2466 (2015) to argue that an "objective/deliberate indifference" test applies. (Plaintiff's Obj. at 9-10.) Because *Kingsley* involved excessive force, it is inapplicable to Plaintiff's substantive due process claim. *See Kingsley*, 135 S. Ct. at 2473.

[9]    While Plaintiff also opposes the Magistrate Judge's dismissal of his substantive due process claim based on his placement in the "Omega One, Two, and Three Units" (Plaintiff's Obj. at 1), his Complaint makes no reference to placements in Omega One or Three. (*See generally* Compl.) Even if properly alleged in the Complaint, Plaintiff's claims based on placements in Omega One and Three fail for the same reasons that his placements in Omega Two and HSA fail. With respect to his placement in Omega Two, the Magistrate Judge recommended dismissing Plaintiff's claims based on a failure to allege personal involvement of any Defendant. (Report and Recommendation at 58.)

(Footnote Continued on Next Page)

The Court finds no reason to depart from the Magistrate Judge's recommendation, which is both factually and legally correct. In particular, the Magistrate Judge correctly applied the "shocks the conscience" standard. While Plaintiff argues that HSA may be construed as physical constraint, the Magistrate Judge correctly observed that "at some point along the spectrum of restrictions that might potentially be characterized as bodily restraints, the asserted restraint becomes merely an incident of the fact of commitment." (Report and Recommendation at 55 (citing *Montin v. Gibson*, 718 F.3d 752, 755 (8th Cir. 2013)).) The Court agrees with the Magistrate Judge's determination that "placement in HSA is another point along that continuum." (*Id.* at 56.) The Magistrate Judge correctly concluded that while placement in HSA is more restrictive than that addressed in *Montin*, it did not involve the actual physical restraints necessary to invoke the professional-judgment standard. *See also Schlumphberger v. Osborne*, Civ. No. 16-78, 2019 WL 927322, at 6 (D. Minn. Feb. 26, 2019) (applying the shocks the conscience standard to a substantive due process claim based on placement in HSA).

The Court also agrees with the Magistrate Judge's conclusion that Plaintiff's allegations fail to shock the conscience. The Magistrate Judge correctly observed that, "[a]ssuming the truth of Plaintiff's allegations that he was placed in a more restrictive environment on two occasions and that each placement was unwarranted because he was not engaging in dangerous or uncontrollable behavior, the fact these temporary

---

Plaintiff does not address this finding in his Objection, however the Court finds no reason to depart from the Magistrate Judge's recommendation, which is both factually and legally correct. Further, for the same reasons as Plaintiff's claim related to HSA, his placement in Omega Two is dismissed because it fails to shock the conscience.

placements may have been unwarranted does not rise to the level of being so severely egregious or outrageous as to demonstrate a brutal and inhumane abuse of power shocking to the conscience." (Report and Recommendation at 57.) Accordingly, the Court adopts the Magistrate Judge's recommendation to dismiss Plaintiff's substantive due process claim.

## V.     Qualified Immunity

Qualified immunity protects state actors from civil liability when their "conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzger*ald*,* 457 U.S. 800, 818 (1982). The defense protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To overcome the defense, a plaintiff must show that: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citation omitted). Rights are clearly established when "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Magistrate Judge recommended that Defendants are not entitled to qualified immunity in connection with the unclothed visual body searches and HSA placements on December 6 and 7, 2016 because at this point in the proceedings, it is unclear whether a reasonable person would have known such actions violated any rights in the context of a motion to dismiss. (Report and Recommendation at 40, 52.)

Defendants argue that the Magistrate Judge erred because even if Plaintiff could state Fourth or Fourteenth Amendment claims, they are nonetheless entitled to qualified immunity. (Defs.' Obj. at 9.) They contend that caselaw establishes that placing a client in HSA and conducting an unclothed visual body search for a security reason is not a constitutional violation, and that qualified immunity entitles them to rely on this caselaw. (*Id.* at 10-11 (citing *Hall*, 801 F.3d at 919).) As discussed above, *Hall* differs from the instant case because the record here does not clearly reflect whether Defendants were acting in connection with a legitimate government interest. Therefore, the Court agrees with the Magistrate Judge's recommendation that Defendants' are not yet entitled to qualified immunity. Assuming the truth of Plaintiff's allegations, the Court cannot determine whether qualified immunity applies until the claims are further developed.

## VI.   Punitive Damages

"Punitive damages may be awarded under 42 U.S.C. § 1983 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Schaub v. VonWald*, 638 F.3d 905, 922 (8th Cir) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). "Proving reckless indifference requires evidence that the defendant acted in the face of a perceived risk that his or her actions would violate federal law." *McAdoo v. Martin*, 899 F.3d 521, 527 (8th Cir. 2018) (quotation omitted). "Punitive damages punish a defendant for outrageous, intentional, or malicious conduct, and deter similar extreme conduct in the future." *Schaub*, 638 F.3d at 922-23 (footnote omitted). "It is a question of fact whether a

defendant's conduct was motivated by an evil motive or involves reckless indifference to the federally protected rights of others." *Id.* Therefore, "[w]hile an award of compensatory damages is mandatory upon a finding of liability, punitive damages are awarded or rejected in a particular case at the discretion of the factfinder once sufficiently serious misconduct by the defendant is shown." *Washington v. Denney*, 900 F.3d 549, 563 (8th Cir. 2018) (quotation omitted). "The factfinder focuses on the defendant's intent in determining whether to award punitive damages and whether the defendant's conduct is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards." *Id.* at 563-64 (internal marks quotation omitted).

Given the fact-specific nature of punitive damages, the Magistrate Judge recommended that Defendants' request to strike Plaintiff's request for punitive damages should be denied without prejudice. (Report and Recommendation at 64.) He further observed that Defendants can argue at a later point in the litigation that the evidence does not support a finding of evil motive, intent or reckless callous indifference to the federally protected rights of others. (*Id.*)

Defendants contend that the Magistrate Judge acknowledged that Plaintiff only pleaded the necessary elements of punitive damages with respect to Defendants McGowan and Kosloski, and that he erred by declining to recommend dismissing the claims against all other Defendants who Plaintiff failed to sufficiently allege evil motive or intent or callous indifference. (Def. Obj. at 12 (citing *Cameron v. Whirlwindhorse*, 494 F.2d 110, 113-114 (8th Cir. 1974)).)

In *Cameron*, though, the complaint was supplemented with undisputed facts that dispelled any notion that the defendant acted in a malicious way. 494 F.2d at 114. Here, the record is unclear as to whether Defendants acted maliciously, with evil motive, or with reckless callous indifference. The Court agrees with the Magistrate Judge's analysis that it is premature to dismiss Plaintiff's punitive damages claim against Defendants at this time.

Based upon the *de novo* review of the record and all of the arguments and submissions of the parties and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

### ORDER

1.     Defendants' objections (Doc. No. [67]) to Magistrate Judge Tony N. Leung's January 25, 2019 Report and Recommendation are **OVERRULED**.

2.     Plaintiff's objections (Doc. No. [70]) to Magistrate Judge Tony N. Leung's January 25, 2019 Report and Recommendation are **OVERRULED**.

3.     Magistrate Judge Tony N. Leung's January 25, 2019 Report and Recommendation (Doc. No. [65]) is **ADOPTED**.

4.     Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. No. [24]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.     Plaintiff's claims for monetary damages against Defendants in their official capacities are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

b.      Plaintiff's claims based on the Minnesota Constitution are

**DISMISSED WITH PREJUDICE**.

c.      Plaintiff's official-capacity claims are **DISMISSED**

**WITHOUT PREJUDICE**.

d.      Plaintiff's First Amendment claims are **DISMISSED**

**WITHOUT PREJDUICE**, except for Plaintiff's retaliation claims against

McGowan and Kosloski, including but not limited to Kosloski's

participation in the search of Plaintiff's room.

e.      Plaintiff's Fourth Amendment claims are **DISMISSED**

**WITHOUT PREJUDICE**, except as to Wyatt, Beavens, Shorter, and

Fischer based on the unclothed visual body searches on December 6 and 7,

2016.

f.      Plaintiff's Fourteenth Amendment claims are **DISMISSED**

**WITHOUT PREJDUICE**, except as to Wyatt, Beavens, Gianinni,

Fischer, Johnson, Brindamor, Aldrin, Lind, Goeglein, Korby, Schesso,

Shorter, Cowell, and Cellelo for procedural due process based on Plaintiff's

placement in the HSA on December 6 and December 7, 2016.

g.      Plaintiff's supervisory claims are **DISMISSED WITHOUT**

**PREJUDICE**, except as to:

(i)      Kosloski in connection with his First

Amendment claims.

(ii)     Johnson Piper, Richardson, Moser, Kniesel,

Sadjak, Benoit, and Kosloski in connection with his

Fourteenth Amendment procedural due process claims.

h.     The request to strike Plaintiff's request for punitive damages

is **DENIED WITHOUT PREJUDICE**.

Dated:  March 22, 2019         s/Donovan W. Frank
                               DONOVAN W. FRANK
                               United States District Judge